## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL DUFF,           :
                            :

    Petitioner,         :     Civil No. 3:09-CV-672
                            :

        v.           :     (Chief Judge Kane)
                            :

CRAIG APKER,        :     (Magistrate Judge Carlson)
                            :

    Respondent.      :

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

In 1976, Michael Duff was convicted of possessing with the intent to distribute illegal drugs. He was sentenced to serve a term of five years in prison, followed by a six-year term of special parole. Had he reported to prison as required in 1976, and served his term of prison and parole without incident, he would have been released from federal custody in 1987. Instead, due to his own refusal to surrender to federal authorities for 12 years, his subsequent escape from a halfway house, and his repeated violations of the terms of his parole over a number of years, he remains incarcerated in December, 2010 – more than 34 years after his initial conviction. Now, Duff has come to federal court seeking a writ of habeas corpus and his immediate release from federal custody,

claiming that the United States Parole Commission (the "Commission") has improperly subjected him to multiple terms of special parole, and that if the Commission had properly calculated his release date, he would have been free from federal custody sometime in 2006.

Although it appears undisputed that the Commission did, for a time, improperly convert Mr. Duff's parole to a new term of special parole, the record reflects that the Commission subsequently corrected its error. It further appears from Duff's parole records that regardless of the Commission's prior error, Duff remains properly incarcerated for his most recent rescission of his parole in 2008, following a 2006 conviction in the Commonwealth of Massachusetts of violent crimes while Duff remained under federal parole supervision. Duff does not dispute that regardless of whether he was serving a term of regular parole (which he is deemed to have been), or a term of special parole (which he was not), any time spent on parole prior to his conviction would have been properly forfeited. Instead, Duff seems to believe that he should have been released from federal custody sometime in 2006 – before his latest conviction – and that if he had been, the Commission would have unable to detain him as a result of this offense.

Upon careful reflection, Duff's petition to this Court appears to have been predicated upon his erroneous belief that he first began serving a term of special parole in 1990. Because it appears undisputed in the record that Duff did not begin serving a special parole term until 1997, and that his parole was subsequently rescinded properly for a number of violations, it appears that Duff remains properly within federal custody where he is serving the balance of his parole term in regular imprisonment. Furthermore, although Duff is right that the Commission previously converted his regular parole to special parole, this error has not actually caused him injury, as the error was later corrected and Duff would have remained under the Commission's custody regardless. Based upon these findings, we must recommend that the district court deny Duff's petition for habeas corpus.

## II. STATEMENT OF THE CASE

This case presents the Court with a question relating to a vestige of federal sentencing and parole laws and regulations that pre-date the Sentencing Reform Act of 1984,[1] and the subsequent promulgation of the United States Sentencing

---

[1] Pub.L. No. 98-473, 98 Stat. 1987, codified as amended at 18 U.S.C. §§ 3551-3586. The Act became effective on November 1, 1987, and created the

Guidelines.  The question that the Petitioner, Michael Duff, asks the Court to answer – and the question that Duff apparently believes compels his immediate release from federal custody – is whether the United States Parole Commission has the authority to reimpose terms of special parole following the revocation of such parole.  Duff argues that the Commission exceeded its authority when it reimposed terms of special parole following revocations of Duff's special parole in 1993, 1996, and 1998.  As a result, Duff contends that the Commission wrongfully deemed 1,260 days of his street time forfeited following the revocation of re-imposed terms of special parole.  Duff asserts that if his parole had been converted to regular parole, his street time would have been credited, he would have been released from parole supervision sometime in 2006, and he should, therefore,  be released from incarceration and from the supervision of the Commission.

The Commission disagrees with Duff's assertions, but declines to address the merits of Duff's arguments about its authority to reimpose a term of special parole, arguing instead that Duff's petition should be denied for two different

United States Sentencing Commission, which was given the responsibility to develop what became the United States Sentencing Guidelines.

reasons.  First, the Commission maintains that this habeas petition should be dismissed because Duff failed to exhaust administrative remedies relating to his claims.  Secondly, the Commission asserts that Duff's claims are moot because in 2009 the Commission deemed his parole to have been converted to a regular term of imprisonment rather than to another period of special parole.  Because the Commission contends that Duff is no longer being subject to a renewed term of special parole, but is instead properly being held to a term of regular imprisonment, his petition presents only a moot argument that the Court has no power to adjudicate.

We have considered the parties' respective arguments, and the record that has been submitted regarding Duff's parole history.  To the extent that Duff is asserting that the Commission's prior action of imposing new terms of special parole was improper, we agree.  Binding precedent in this circuit clearly holds that the Commission lacks legal authority to reimpose terms of special parole after revocation of an initial term of special parole.  Although the Commission previously believed that this precedent had been overruled by a subsequent decision by the United States Supreme Court, it appears the Commission has subsequently – and properly – changed its view, and now subjects those in its

custody to terms of regular parole after an initial term of special parole has been rescinded. Documents attached to the Commission's brief opposing Duff's petition indicate that the Commission has taken steps to cure its earlier action of converting Duff's parole to a term of special parole, and has instead deemed that Duff has been serving a regular term of imprisonment since the time he was reparoled on December 9, 2002. The Commission has represented that until the balance of his term is served, Duff will be treated as a regular parolee, or mandatory releasee. Duff has failed adequately to address the Commission's response to his claims.

Although Duff seems to argue that he should have been released from custody prior to his most recent parole revocation in 2008, which followed his conviction of new crimes in Massachusetts committed while he was on parole in 2006, the record does not support his view. As a threshold, and ultimately dispositive matter, it appears that Duff is substantially mistaken about when he first began serving a term of special parole, and about his entitlement to be credited the time he spent under supervision while on parole prior to multiple instances where his parole was revoked. Furthermore, in consideration of the Commission's most recent action of voiding its own prior decision in 2002 to

convert Duff's regular parole term to a special parole term, and its concomitant action of declaring that Duff was not entitled to credit for time spent on regular parole due to his conviction and sentence in 2008, we cannot agree with Duff that he is entitled to immediate release from custody. Instead, we agree with Duff only that the Commission previously erred when it reparoled Duff to a term of special parole following an initial revocation. But because it appears that the Commission has since rectified this error, and because we do not find that Duff has demonstrated that he was entitled to be released from custody prior to his most recent revocation in 2008 following the commission of new crimes of violence, we will recommend that Duff's petition be denied.[2]

---

[2] To the extent that Duff disagrees with the Court's assessment of the record evidence regarding his parole history, it is incumbent upon him to bring this to the attention of the District Court in the form of a proper objection filed within 14 days following the issuance of this recommendation. We note that in his reply brief (Doc. 23), Duff completely failed to address the Commission's evidence regarding when he first began serving a term of special parole. Whereas Duff first represented to the Court that he was granted special parole in 1990, it actually appears that Duff did not begin serving his special parole term until February 26, 1997; all parole prior to this time appears to have been regular parole on Duff's five-year term of incarceration. In the event that the Court has misconstrued Duff's parole history, and the periods during which he claims to have been entitled to credit for time spent on supervision, he must do more than argue that he is being subject to an "additional term of incarceration," as he has done in his reply brief. (Doc. 23, at 5.) Instead, he must explain how the Commission has erred in computing the period of time that he is required to serve following his numerous

## III.   FACTUAL BACKGROUND

On June 29, 1976, the United States District Court sentenced Michael Duff to a term of imprisonment of five years, to be followed by six years of special parole following his conviction for possession with the intent to distribute narcotics, in violation of 21 U.S.C. § 841(a).[3] (Doc. 22, Ex. 1, Sentence Computation Data.) Duff did not begin serving the five-year sentence until August 31, 1988, because he failed to surrender voluntarily following his conviction and sentence, and he remained free from federal custody for more than 12 years.

According to the Commission, Duff was subsequently paroled on the five-year term, but he subsequently absconded from supervision. His parole was thereafter revoked and he served his five-year term to its expiration. Duff began serving his six-year term of special parole on February 26, 1997, and it was to

_____

parole revocations, the most recent of which occurred in 2008 following Duff's conviction for committing violent offenses in Massachusetts.

[3] Specifically, Duff was convicted on two counts of drug trafficking, and was sentenced to serve two five-year terms of imprisonment, to be run concurrently. (Doc. 22, Ex. 1, Sentence Computation Data.)

run until February 27, 2003.[4]  (Doc. 22, Ex. 2, Certificate of Special Parole.)

The Commission subsequently revoked Duff's special parole term on August 26, 1998.  (Doc. 22, Ex. 3.)  As part of that revocation, the Commission ordered that Duff receive no credit for the time spent on parole ("street time").  (Id.)  According to the Commission's Notice of Action, Duff was to become eligible to be reparoled on February 2, 1999, and his special parole term was to be converted to regular parole at that time.  (Id.)

On January 27, 1999, Duff's reparole date was retarded to June 2, 1999.  (Doc. 22, Ex. 4.)  Following this determination, however, Duff escaped from a halfway house where he had been residing prior to his parole release.  (Doc. 22, Ex. 5, Memorandum dated May 3, 1999.)  As a result of this latest violation, the Commission again retarded Duff's parole date and ordered that he appear for a rescission hearing after he was apprehended and returned to federal prison.  (Doc. 22, Ex. 6, Notice of Action dated June 14, 1999.)

---

[4] Special parole was a statutory creation that was first implemented in 1970 as an additional penalty imposed for drug offenses, and was mandatory in all such cases until the Sentencing Reform Act replaced it with supervised release.  See Fowler v. United States Parole Comm'n, 94 F.3d 835, 839 (3d Cir. 1996).  Special parole was imposed by the sentencing court in addition to a prison term, and upon revocation, the violator's new term of imprisonment was not reduced by the time spent on parole.  Id. at 839, 837 (quoting 21 U.S.C. § 841 (c)).

Duff was returned to federal custody on March 7, 2002. On August 2, 2002, the Commission vacated the conversion of Duff's special parole to regular parole, apparently because the Commission believed that an intervening decision by the United States Supreme Court in Johnson v. United States, 529 U.S. 694 (2000) invalidated lower court decisions that mandated the conversion of a special parole term to regular parole after its revocation. (Doc. 22, Ex. 7, Notice of Action dated August 2, 2002.) Following the rescission hearing held following his apprehension and return to federal custody, the Commission rescinded Duff's earlier grant of parole, and ordered parole effective December 9, 2002. (Doc. 22, Ex. 8, Notice of Action dated July 26, 2002.) As part of his new parole, Duff was to remain under the Commission's supervision until December 8, 2006. (Doc. 22, Ex. 9, Certificate of Parole.)

Just months before the Commission's term of supervision was to conclude, the Commission issued a warrant charging Duff with violating the terms of his parole based upon information that Duff had committed crimes of violence in the Commonwealth of Massachusetts while on parole. Specifically, the warrant represents that Duff had been charged with armed assault with intent to murder, assault and battery with a deadly weapon, and related offenses,

stemming from altercations that Duff had with his girlfriend and her son. (Doc. 22, Ex. 10, Warrant Application.) This warrant was supplemented on March 7, 2008, to include information that Duff had been convicted of reckless assault and battery by a dangerous weapon following a trial in Massachusetts. (Doc. 22, Ex. 11, Supplement to Warrant Application.) Duff was sentenced to a two-year term of imprisonment for the conviction in Massachusetts. (Id.)

Duff came into the Commission's custody on the warrant on February 21, 2008, and received a revocation hearing on November 13, 2008. (Doc. 22, Ex. 12, Hearing Summary.) Following this hearing, the Commission revoked Duff's special parole, forfeited his street time, and ordered that he be required to serve the expiration of his sentence. (Doc. 22, Ex. 13, Notice of Action dated December 10, 2008.)

On May 19, 2009, the Commission voided its August 2, 2002, Notice of Action, which had the effect of rescinding the Commission's prior decision to convert Duff's regular parole to special parole, and converted Duff's special parole to a regular term of imprisonment. (Doc. 22, Ex. 14.)

## IV.  PROCEDURAL BACKGROUND

Duff commenced the instant habeas proceedings in the United States District Court for the Eastern District of Pennsylvania on December 5, 2008. (Doc. 1.)  On March 6, 2009, the Honorable Anita B. Brody of the Eastern District ordered that the petition be transferred to this Court for resolution. (Doc. 9.)  The petition was subsequently transferred to the Middle District on April 13, 2009.  (Doc. 10.)  Following the appointment of counsel to represent Duff (Doc. 15), the Court directed the Respondent to show cause why the petition should not be granted (Doc. 17.)  The Respondent filed his response to the petition on May 26, 2009.  (Doc. 22.)  Duff filed a reply brief on June 10, 2009.  (Doc. 23.)  The action was subsequently referred to the undersigned on June 8, 2010, to prepare a report and recommendation on the petition.

## V.  DISCUSSION[5]

---

[5]  We disagree with the Commission that we should decline to consider Duff's petition on the grounds that he failed to exhaust his administrative remedies.  At its core, Duff's petition is alleging that he was injured by the Commission's decision in 2002 to convert his parole term from regular parole to special parole.  Duff's parole records indicate that the decision to vacate its prior action was not appealable.  (Doc. 22, Ex. 7.)  As a result, we agree with Duff that it would be unreasonable to have expected him to exhaust his claims with respect to Commission action that he was informed could not be challenged.  Similarly, we decline to recommend that the Court dismiss the petition on mootness grounds,

In his petition, Duff claims that he was first paroled to special parole on August 3, 1990, and that his parole term was subsequently revoked on February 1, 1993, for technical violations. (Doc. 1, at 3.) As result of this revocation, Duff states that he was ordered to have forfeited his street time, and represents that he was reparoled on December 30, 1994, on a new term of special parole. (Id.) Duff further represents that this alleged second term of special parole was revoked for technical violations on December 13, 1996, and that the Commission ordered that his street time be forfeited as a result. (Id. at 3-4.) Duff claims that he was paroled again on February 26, 1997, and yet another term of special parole. (Id. at 4.) Duff asserts that this term of special parole was revoked on August 26, 1998, "following technical violations." (Id.) Duff then notes that he was paroled to another term of special parole on December 2, 2002. (Id.) The petition contends that at the time he was paroled in December 2002, he had 1,460 days remaining on his special parole term, and that this time

---

as Duff is plainly claiming that he should no longer be subject to federal custody, and that his continued incarceration is due to the Commission's improper failure to credit Duff's street time against his sentence. Although we disagree with Duff, and find that he is incorrect regarding a number of factual and legal matters, we do not find that the Commission has demonstrated adequately that his claims are moot. Instead, we find it appropriate to consider Duff's claims on the merits and recommend that the District Court deny the petition following a merits analysis.

included 714 days of street time between December 30, 1994, and December 13, 1996, and 546 days of street from February 26, 1997, to August 26, 1998. (Id.) In total, Duff claims that due to the Commission's alleged improper practice of subjecting him to multiple terms of special parole, 1,260 days of his street time was forfeited following revocation on technical parole violations. (Id.) Duff claims that at the time of his most recent term asserts that the Commission lacked the authority to reimpose additional terms of special parole after it revoked his original term of special parole, and that by doing so that Commission violated the Third Circuit's holding in Fowler. Duff seeks his immediate release from federal custody, apparently on the grounds that the Commission has improperly calculated his release date due to the Commission's improper failure to credit him for street time while he was on parole.

As will be discussed below, the fundamental problem with Duff's claims is that he does not, in fact, appear to have begun serving his term of special parole until February 27, 1997, and this special parole term was first revoked on August 26, 1998. Duff first forfeited his street time following this first revocation, but it does not appear that he forfeited any street time prior to this first revocation – nor could he have, since he had only begun to serve his term

of special parole in February 1997. Accordingly, as we understand Duff's arguments, and the evidence contained in his parole records, Duff's claims fail for the threshold reason that he has simply miscalculated the amount of street time to which he was theoretically entitled, and the amount of street time that was actually forfeited. As a result, we cannot agree with Duff's assertion that he was entitled to be released from federal custody in December 2006, as he seems to base this contention on his inaccurate representations regarding his parole history.

Furthermore, Duff's most recent parole revocation was the result of his conviction and resulting prison sentence for the commission of violent crimes in Massachusetts – crimes committed while Duff was on federal parole. Duff's own parole record, and the governing law, provides that Duff would have forfeited his street time as a result of this conviction regardless of whether he was serving a term of special parole, or a term of regular parole.[6] As Duff's

---

[6] In fairness, Duff does not argue that he should have received credit for his street time prior to this latest revocation. Instead, it appears that Duff believes that prior revocations of street time were improper, and that if he were credited with prior street time, he would have been released from the Commission's custody prior to his commission of new crimes in Massachusetts. As we explain this report, we disagree with Duff's representations regarding his parole history, his calculation of street time credit owed to him, and his ultimate claim regarding

parole term had not expired at the time of his commission of new crimes, we cannot agree that Duff is entitled to immediate release, as the record reveals that he properly continues to be subject to the Commission's supervision. Finally, we note that the Commission has taken steps to rectify its prior misapplication of the binding legal precedents prohibiting it from reimposing terms of special parole following revocation, and now has properly noted that Duff is being held to a term of regular imprisonment on a violation of the terms of his regular parole.

### A.     The Nature of Special Parole

Because Duff's petition stems from a fundamentally erroneous understanding regarding the nature of his special parole, before addressing the specific claims in this case, we pause to address briefly the differences between traditional, or regular, parole and special parole, as well as the relevant case law addressing the Commission's authority with respect to these distinct forms of supervised release. As the Third Circuit has explained, an individual on traditional parole is considered to be serving his original sentence. See Fowler

---

when he should have been found to have completed his parole term.

v. United States Parole Comm'n, 94 F.3d 835, 839 (3d Cir. 1996). As a result, if a parolee violates a condition of his parole, he may be returned to prison and required to serve the remainder of the unexpired term of his sentence. Id. This unexpired term consists of the original term of imprisonment, less time served, and the parolee's street time. Id. Credit for street time is a "natural consequence of the concept that a parolee serves his or her time 'on the street.'" Id. (quoting Evans v. U.S. Parole Comm'n, 78 F.3d 262, 263 (7th Cir. 1996)). As a result, traditional or regular parole is considered to be "a conditional release from incarceration . . . prior to the expiration of the full term set by the sentencing court.'" Id. (quoting Parry v. Rosemeyer, 64 F.3d 110, 116 n.10 (3d Cir. 1995)).

In contrast to traditional, or regular parole, Congress enacted a special parole statute in 1970 as part of a comprehensive drug control plan that was promulgated pursuant to the Controlled Substances Act of 1970.[7] As the Third Circuit has explained, special parole is distinct from regular parole in three respects:

---

[7] Pub.L. 91-513, Tit. II, 401(b), 84 Stat. 1250, codified at 21 U.S.C. § 841(b).

> [F]irst, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words, "street time" does not count toward completion of special parole.

Fowler, 94 F.3d at 840 (quoting Evans, 78 F.3d at 263).  The statute authorizing special parole subjected those convicted of distributing or manufacturing certain controlled substances to a maximum of fifteen years in prison, and if a prison sentence was imposed, to a mandatory three-year term of special parole.  See Gozlon-Peretz v. United States, 498 U.S. 395, 399 (1991).  Specifically, 21 U.S.C. § 841 provided in relevant part as follows:

> A special parole term . . . may be revoked if its terms and conditions are violated.  In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole.  A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.  A special parole term provided for in this section shall be in addition to, and not in lieu of, any other parole provided for by law.

Fowler, 94 F.3d at 837 (quoting 21 U.S.C. § 841(c) (1982)). This statute was repealed pursuant to the Comprehensive Crime Act of 1984,[8] but it remains applicable to subject criminal offenses committed prior to November 1, 1987. Fowler, 94 F.3d at 837 n.1. As a result, the statute remains applicable to Duff, who was convicted and sentenced in 1976. (Doc. 22, Ex. 1.)

The distinction between these two forms of parole, which is critical to this case, and fatal to Duff's petition, has long been recognized by this Court, which has acknowledged that under the sentencing system in place at the time of Duff's conviction a criminal defendant would first be subject to a term of parole, and then later to a term of special parole. As the United States Court of Appeals for the Third Circuit has explained:

> [P]arole means a conditional release from incarceration under supervision at a time *prior* to the expiration of the full term [of imprisonment] set by the sentencing court. But the Special Parole Term is a new concept. By statute it 'shall be in *addition to, and not in lieu of, any other parole provided for by law.*' 21 U.S.C. § 841(c). It is designed to take effect upon the expiration of the period of parole supervision following mandatory release, or at the full term date following parole, or upon release from confinement following sentence expiration.

---

[8] Pub.L. No. 98-473, 98 Stat. 2153.

Roberts v. United States, 491 F.2d 1236, 1238 (3d Cir. 1974)(emphasis added) Thus, at the time of Duff's sentencing, federal law specifically contemplated that a defendant would serve a term of imprisonment, which might be mitigated by parole release during that jail term, along with a "special parole term [which] would be in addition to any other parole [the defendant] might receive." United States v. Ackerman, 619 F.2d 285, 286 (3d Cir. 1980). As the Court of Appeals has observed, "[Special Parole was] designed to take effect upon the expiration of the period of parole supervision following mandatory release, or at the full term date following parole, or upon release from confinement following sentence expiration," Lyles v. Samuels, 257 F.App'x. 531, 532 (3d Cir. 2007), therefore, a "special term of parole [must] be served after completion of incarceration and any term of regular parole." Id. at 532.

The rationale for this sentencing policy, which required drug trafficking defendants to first complete traditional parole, and then later serve a consecutive term of special parolee can be simply stated: "[A] special parole term was 'designed to test the offender's ability to lead a lawful life in the community.... To permit the special parole term to run concurrently with an ordinary term of imprisonment would undermine this process . . . .'" Lyles v. Samuels, supra, 257 F.App'x. at 532, quoting, Mastrangelo v. United States Parole Comm'n, 682 F.2d 402, 404-05 (2d Cir.1982).

One consequence of this system, which first required a defendant to serve traditional parole before he commenced a special parole term is that for those offenders who failed the special parole term's "test [of] the offender's ability to lead a lawful life in the community," Mastrangelo v. United States Parole Comm'n, 682 F.2d 402, 404-05 (2d Cir.1982), the defendant's aggregate sentence could exceed the term of years initially imposed by the court, since a parole violation at the end of such a term would result in parole revocation, potential loss of street time, and a new and extended release date. See Fowler v. United States Parole Comm'n, 94 F.3d 835, 839 (3d Cir. 1996).

This distinction has immediate relevance for Duff, who was sentenced in 1976, but absconded for 12 years and only commenced service of his sentence in 1988. Duff then reportedly was paroled, on what would have been the traditional parole which presaged any special parole term in 1990, but absconded yet again and violated that traditional parole, leading to the revocations and re-incarcerations which delayed completion of the first aspect of this sentence– the jail term and traditional parole terms– until 1997. Thus, to the extent that Duff asserts that his misconduct in the early 1990's while on

traditional parole in some fashion inured to his benefit in concluding his subsequent special parole term, it appears that he simply errs.

## B.  Fowler and the Commission's Response

There is a second aspect to this distinction between traditional and special parole which is also highlighted in this habeas petition. While traditional parole is imposed by the Parole Commission, by statute, special parole terms can only be imposed by the court. In Fowler, the Third Circuit concluded that the former § 841 does not permit the Commission to reimpose terms of special parole after the initial special parole term has been revoked.  Fowler, 94 F.3d at 841.  Instead, the Court held that § 841(c) "clearly provides for the re-release of a special parole violator and permits him or her to serve a sentence of imprisonment on the street."  Id. at 839. Accordingly, the Court found that any additional parole term that the Commission imposed following a revocation of special parole must be traditional parole.  Id. at 840.  The Court explained:

> [S]ection 841(c) does not provide for a new term of special parole following revocation.  Rather, the non-incarcerative custody authorized by § 841(c) is part of the sentence of imprisonment mandated upon the revocation of special parole; it is not in addition to it.  Thus, it is traditional parole.  Nowhere in § 841(c) has Congress vested a district judge or the Parole Commission with the authority to reimpose a special parole term.

Id.

It appears that following <u>Fowler</u>, the Parole Commission amended its approach to the reimposition of parole following a revocation of parole. In the case of Michael Duff, his parole record reflects that he first began serving a six-year term of special parole on February 26, 1997, (Doc. 22, Ex. 2), and that this special parole was subsequently revoked on August 26, 1998, (Doc. 22, Ex. 3.) The Commission's Notice of Action specifically provided that Duff's "special parole was converted to regular parole because circuit law that applies to the place of your incarceration or parole, or to which you may be released in the future, requires [such conversion]." (<u>Id.</u>) It was further noted that Duff was to become eligible to being serving regular parole in February 1999, although this eligibility date was later retarded by 120 days until June 2, 1999. (<u>Id.</u>) Before he could be paroled, however, Duff escaped from a halfway house on April 30, 1999, and remained outside of federal custody until he was recovered in 2002, after which his parole grant effective date of June 2, 1999, was rescinded and a new parole effective date of December 9, 2002, was imposed.

## C.    <u>Johnson</u> and the Commission's Interpretation

In 2000, the United States Supreme Court handed down a decision in <u>Johnson v. United States</u>, 529 U.S. 694 (2000), in which the court considered a former version of 18 U.S.C. § 3583, the statute governing supervised release. In <u>Johnson</u>, the Supreme Court was specifically addressing whether the version of the statute at issue

permitted district courts to impose new terms of supervised release following revocation of the initial term of supervised release that had been imposed by the sentencing judge. In a single footnote, the court analogized the reimposition of supervised release to the Commission's practice of reimposing special parole terms. The court noted that "there seems never to have been a question that a new term of parole could follow a prison sentence imposed after revocation of an initial parole term." Id. at 711. The court then provided this footnote:

> The same is true of special parole, part of the required sentence for certain drug offenses. Though the special parole statute did not explicitly authorize reimposition of special parole after revocation of the initial term and reimprisonment, the Parole Commission required it. See 28 CFR § 2.57(c) (1999). Some courts have recently decided that this regulation is inconsistent with 21 U.S.C. § 841(c) (1982 ed.), see e.g., Evans v. United States Parole Comm'n, 78 F.3d 262, 263 (C.A. 7 1996), but this does not affect the backdrop against which Congress legislated in 1984 [whereby the parole system was replaced with supervised release].

Id. at 712 n.11.[9] Following this decision in Johnson, the Commission appears to have concluded that the Supreme Court had effectively overruled Fowler and Evans and

_____

[9] Notably, the Supreme Court's analogy was not embraced by the full court. In dissent, Justice Scalia observed that "[t]he question whether further supervised release may be required after revocation of supervised release is so entirely different from the question whether further parole may be accorded after revocation of parole, that the Court's appeal to the parole practice demonstrates nothing except the dire scarcity of arguments available to support its conclusion." Johnson, 529 U.S. at 726 (Scalia, J., dissenting).

similar lower court decisions that had held the Commission was powerless to reimpose a term of special parole following revocation. Thus, with respect to Duff, the Commission issued a Notice of Action on August 2, 2002, vacating its prior action of August 26, 1998, which had converted Duff's special parole term to regular parole or regular imprisonment. (Doc. 22, Ex. 7.)

### D. Duff's Subsequent Revocation and the Commission's Corrective Action

In accordance with the change in Duff's parole status, after he was returned to federal custody in 2002, Duff was reparoled on December 9, 2002, with an additional 1,460 days remaining to be served on his sentence – or three years, eleven months, and twenty-nine days. (Doc. 22, Ex. 9.) The Commission, therefore, issued a Certificate of Parole that ordered Duff released on parole until December 8, 2006. (Id.)

While Duff was serving this term of parole within the District Massachusetts, and only months before his parole term was to conclude, the Commission issued a warrant application on May 26, 2006, for Duff's return. In the warrant application, the Commission charged that Duff had tested positive for using cocaine, and that he had been criminally charged with armed assault with intent to murder, assault and battery with a dangerous weapon, assault and battery, and threat

to commit a crime. (Doc. 22, Ex. 10.) This warrant application specifically noted that if Duff had been convicted of a new offense while on parole that was punishable by a term of imprisonment, he would not receive any sentence credit for the time he had spent on parole since December 9, 2002. (Id.) Furthermore, the warrant application noted that if Duff was serving a term of special parole at the time of the violation, he similarly would not receive any credit toward service of his sentence for the time spent on parole. (Id.) This admonition in the warrant application is consistent with federal law governing the forfeiture of street time upon the conviction of a new crime while on regular parole. See 18 U.S.C. § 4210(b)(2); 28 C.F.R. § 2.52(c)(2). The Commission supplemented its warrant application on March 7, 2008, to note that Duff had subsequently been convicted by the Commonwealth of Massachusetts for reckless assault and battery by a dangerous weapon, and was sentenced to two years in prison. (Doc. 22, Ex. 11.) Thus, regardless of whether Duff had been serving a term of regular or special parole, his street time was subject to forfeiture as a result of his conviction and sentence in Massachusetts.

Upon review of Duff's record, and the law governing the forfeiture of street time while on either special or regular parole following revocation, we cannot agree with Duff's assertion that he was entitled to be free from the Commission's supervision, and from federal custody, in 2006. Duff's special parole was first

revoked on August 26, 1998, and the street time he spent between February 27, 1997, and August 26, 1998, was properly forfeited as a result of this first revocation. Although the Commission improperly reversed its action taken in 2002 to convert Duff's parole from regular parole to special parole, the Commission properly corrected this error in 2009 when it reversed its 2002 action, and converted Duff's sentence to a regular term of imprisonment.[10]   The Commission's improper

---

[10]  To the extent that Duff is arguing that the Commission's 2002 action of reimposing a term of special parole was erroneous, we agree.  Although it does appear that the Supreme Court's reasoning in Johnson implicitly undermines Fowler, see, e.g., Ortiz v. Apker, – F. Supp. 2d. –, 2010 U.S. Dist. LEXIS 73318, 2010 WL 2891527, at *6 (M.D. Pa. July 21, 2010), district courts within this circuit consistently have concluded that Fowler remains binding precedent that has not been overruled by Johnson or a subsequent decision from the Third Circuit. See, e.g., id.; Bing v. Schultz, No. 07–643, 2008 U.S. Dist. LEXIS 2944, 2008 WL 163689 (D.N.J. Jan. 14, 2008); U.S. v. Burgos, No. 06-3563, 2008 U.S. Dist. LEXIS 14546, 2008 WL 533802 (E.D. Pa. Feb. 26, 2008); Caraballo v. U.S. Parole Comm'n, No. 06-1798, 2007 U.S. Dist. LEXIS 68078, 2007 WL 2702942 (E.D. Pa. Sept. 13, 2007); U.S. v. Rivera, No. 06-3781, 2007 U.S. Dist. LEXIS 22185, 2007 WL 954725 (E.D. Pa. Mar. 28, 2007); U.S. v. Farrow, No. 06-2922, 2007 U.S. Dist. LEXIS 14772, 2007 WL 707362 (E.D. Pa. Mar. 1, 2007).  We agree with the reasoning of these cases, which recognize that although it is possible that the Third Circuit may eventually overrule Fowler, it has not yet done so, and, therefore, the lower courts in this circuit are bound to follow its holding. See Ortiz, 2010 WL 2891527, at *6 (citing United States v. Mitlo, 714 F.2d 294, 298 (3d Cir. 1983) and Internal Operating Procedures of the United States Court of Appeals for the Third Circuit (2002), Rule 9.1).  Notwithstanding our agreement with Duff on this legal issue, it does not provide him any relief in this case, for the reasons explained in this report.

conversion of Duff's parole to special parole in 2002 ultimately did not affect Duff's sentence, and has been cured by subsequent Commission action.

The evidence further shows that the Commission issued warrant application in May 2006 based upon information that Duff had committed new crimes that were punishable by imprisonment. Duff was subsequently sentenced to two years in prison on the Massachusetts conviction, and the Commission would, therefore, have properly revoked his street time while on parole after December 9, 2002, as a result of this latest offense.

Duff's argument that he should already have been released from federal custody is premised upon his mistaken belief that he was improperly serving multiple terms of special parole in 1990, 1993, and 1996, and that street time accumulated during these and other periods of parole should have been credited against his sentence. But as we have noted, Duff was not serving terms of special parole prior to 1997, and, therefore, could not have accumulated any street time that could be credited against his sentence.

While this parole action yields a striking result, the imposition of parole sanctions three decades after Duff was originally sentenced, that result is not unfairly harsh. Rather, that result reflects two immutable truths. First, it is a product of the

application of the sentencing system that was in effect at the time of Duff's 1976 sentencing, a system which first required a defendant to serve traditional parole before he commenced a special parole term. This system was designed to use the special parole term as a "test [of] the offender's ability to lead a lawful life in the community," Mastrangelo v. United States Parole Comm'n, 682 F.2d 402, 404-05 (2d Cir.1982). Second, this outcome reflects the stark reality that, every time Duff was called upon to face this "test [of] the offender's ability to lead a lawful life in the community," he failed that test. Indeed, for approximately half of the past three decades Duff has been fleeing from his sentence, instead of electing to serve that sentence. Thus, because we find that Duff to be materially incorrect regarding the amount of street time that could theoretically have been accumulated while on parole, and about how much street time he has actually forfeited; and because we otherwise find that Duff remains properly subject to the Commission's supervision as part of a conviction entered more than 34 years ago following the revocation of his parole in 2008, we must recommend that the Court deny Duff's petition for habeas corpus.

## VI.  RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that Duff's petition for a writ of habeas corpus (Doc. 1) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

/s/ *Martin C. Carlson*

Martin C. Carlson

United States Magistrate Judge